1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8    VINCENT M. FERRARO,

9                             Plaintiff,                    CASE NO. C15-1381-RBL-MAT

10              v.

11   CAROLYN W. COLVIN, Acting                              REPORT AND RECOMMENDATION
     Commissioner of Social Security,                       RE: SOCIAL SECURITY DISABILITY
                                                            APPEAL
12                            Defendant.

13

14        Plaintiff Vincent Ferraro proceeds through counsel in his appeal of a final decision of the

15   Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16   denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an

17   Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative

18   record (AR), and all memoranda, the Court finds the oral argument requested by plaintiff

19   unnecessary, and recommends this matter be REMANDED for further administrative

20   proceedings.

21   / / /

22   / / /

23   / / /

REPORT AND RECOMMENDATION
PAGE - 1

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1962.[1]  He obtained a high school diploma and a GED, and previously worked as a carpenter, maintenance carpenter, and salvage laborer.  (AR 38, 77-78.)

Plaintiff filed an SSI application on August 16, 2012.  (AR 246.)  Although he alleged disability beginning March 1, 2010 (*see id.*), the earliest month for which SSI can be paid "is the month following the month" the application is filed.  20 C.F.R. § 416.335.  The Commissioner considered plaintiff's alleged disability as of plaintiff's August 16, 2012 application date.  (AR 15.)  Plaintiff's application was denied at the initial level and on reconsideration.

On September 25, 2013, ALJ Kimberly Boyce held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 31-90.)  On January 15, 2014, the ALJ issued a decision finding plaintiff not disabled since the date of his application.  (AR 15-25.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on June 30, 2105 (AR 1-5), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. § 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity.  At step two, it must be determined whether a claimant

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION
PAGE - 2

1   suffers from a severe impairment.  The ALJ found plaintiff's cervical spine degenerative disc

2   disease, affective disorder, anxiety disorder, and substance abuse severe.  Step three asks

3   whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's

4   impairments did not meet or equal the criteria of a listed impairment.

5       If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

6   residual functional capacity (RFC) and determine at step four whether the claimant has

7   demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to lift

8   and/or carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk

9   about six hours on level ground; sit for about six hours in work that permits a mix of standing

10  and sitting in any combination; lift, carry, push, and pull within the light exertional limits with

11  both upper extremities; frequently reach laterally and below with the left upper extremity;

12  occasionally reach overhead with both upper extremities; never climb ladders, ropes, or

13  scaffolds; frequently climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and

14  crawl; and perform work in which concentrated exposure to vibration and hazards, such as

15  unprotected heights and dangerous machinery, is not present.  The ALJ also found that, in order

16  to meet ordinary and reasonable employer expectations regarding work place behavior and

17  production, plaintiff can understand, remember, and carry out unskilled, routine, and repetitive

18  work.  With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

19      If a claimant demonstrates an inability to perform past relevant work, or has no such

20  work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains

21  the capacity to make an adjustment to work that exists in significant levels in the national

22  economy.  With the assistance of the VE, the ALJ found plaintiff capable of performing other

23  jobs, such as a storage facility clerk, photo copy machine operator, and ad material distributor.

REPORT AND RECOMMENDATION
PAGE - 3

1    This Court's review of the ALJ's decision is limited to whether the decision is in

2    accordance with the law and the findings supported by substantial evidence in the record as a

3    whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792

4    F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is

5    unsupported by substantial evidence in the administrative record or is based on legal error.")

6    Substantial evidence means more than a scintilla, but less than a preponderance; it means such

7    relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

8    *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational

9    interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.

10   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

11   Plaintiff argues the ALJ erred in assessing the medical evidence and his credibility, and at

12   step five.  He maintains the ALJ's conclusion is not supported by substantial evidence, but does

13   not specify the type of remand requested.  The Commissioner argues the ALJ's decision has the

14   support of substantial evidence and should be affirmed.

15                                    <u>Medical Evidence</u>

16   Plaintiff argues the ALJ failed to discuss, properly evaluate, or obtain significant medical

17   evidence in the record, leading to a faulty RFC and incomplete questions proffered to the VE.

18   The Court, for the reasons set forth below, agrees with plaintiff, in part, as to errors in the ALJ's

19   consideration of the medical evidence.

20   The ALJ need not discuss each piece of evidence in the record.  *Vincent v. Heckler*, 739

21   F.2d 1393, 1394-95 (9th Cir. 1984).  Instead, "she must explain why 'significant probative

22   evidence has been rejected.'"  *Id*. (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

23   "The ALJ must consider all medical opinion evidence."  *Tommasetti v. Astrue*, 533 F.3d

REPORT AND RECOMMENDATION
PAGE - 4

1035, 1041 (9th Cir. 2008). *See also* 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive.")  In considering the weight to assign the opinions of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources."  Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources."  20 C.F.R. § 416.913(a) and (d), and Social Security Ruling (SSR) 06-03p.

An ALJ must, as a general matter, give more weight to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Uncontradicted opinions may be rejected only for "'clear and convincing'" reasons, and contradicted opinions may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoted sources omitted).  Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).  An ALJ may reject opinions of other sources by providing reasons germane to each source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.    Physical Impairments

The record contained and the ALJ considered a medical opinion addressing plaintiff's physical condition from non-examining State agency physician Dr. Robert Hoskins.  Dr. Hoskins opined plaintiff could perform less than the full range of light work with postural, manipulative, and environmental limitations.  (AR 109-12.)  While the record also contained evidence from treating physicians Drs. Lawrence Tsai, Daniel Nehls, and Derek Scott, none of these providers offered opinions as to plaintiff's abilities or functional limitations.  The ALJ was not, as such, required to provide any reasons for rejecting opinion evidence from these physicians. *Turner v.*

REPORT AND RECOMMENDATION
PAGE - 5

1    *Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).

2         Nor can the ALJ be faulted for affording great weight to the uncontradicted opinion

3    evidence from Dr. Hoskins.  (AR 21-22.)  While plaintiff takes issue with the fact that Dr.

4    Hoskins rendered his opinions before additional evidence came into the record, Dr. Hoskins

5    nonetheless considered significant probative evidence associated with plaintiff's physical

6    impairments.  For example, and contrary to plaintiff's contention, Dr. Hoskins considered the

7    January 2013 MRI "validat[ing]" plaintiff's "significant" cervical impairment.  (AR 112.)  The

8    ALJ's consideration of the sole medical opinion of record addressing plaintiff's physical

9    impairments has the support of substantial evidence.

10        Plaintiff avers error in the ALJ's failure to even discuss treating physicians Drs. Tsai,

11   Nehls, and Scott.  The ALJ, at most, pointed to two pieces of evidence in describing objective

12   findings in the record, evidence received from Drs. Tsai and Nehls respectively.  (*See* AR 21-

13   22.)  Yet, while finding this description of the record notably minimal, the Court agrees with the

14   Commissioner's contention that plaintiff fails to show how any other evidence from plaintiff's

15   treating providers support physical functional limitations going beyond those included in the

16   assessed RFC.  The Court does not, therefore, find reversible error based on the omission of a

17   more detailed discussion of the medical evidence of record.  *See Vincent*, 739 F.3d at 1394-95

18   (ALJ "must explain why 'significant probative evidence has been rejected.'")  However, given

19   the existence of other reversible error, as discussed below, the ALJ should take the opportunity

20   on remand to provide a more detailed discussion of the medical evidence.  That discussion

21   should include, for example, the evidence of plaintiff's January 2013 cervical spine MRI and

22   recommended surgery.

23   ///

REPORT AND RECOMMENDATION
PAGE - 6

B.    Mental Impairments

The record includes and the ALJ addressed medical opinions from nonexamining psychologist Dr. John Robinson (AR 112-13), examining psychologist Dr. Wayne Dees (AR 368-73), and other source Patrick Hains, MSW (AR 587-90).   The record also includes a November 2012 opinion from nonexamining psychologist Dr. Christmas Covell.  (AR 97-98.)

1.    Drs. Covell and Robinson:

The ALJ erred in failing to even mention the opinion evidence from Dr. Covell.  *See Tommasetti*, 533 F.3d at 1041; 20 C.F.R. § 416.927(c).   Because Dr. Covell's opinions are identical to those later offered by Dr. Robinson, the failure to acknowledge the evaluation from Dr. Covell could be construed as harmless.  *See Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (cited sources omitted).   However, unlike the wholly adopted opinions of Dr. Hoskins, the ALJ afforded only some weight to the opinions of Dr. Robinson, specifically rejecting his opinion plaintiff had moderate limitations in social functioning and would do best to work away from the general public.  (*See* AR 21-22, 113.)  While the ALJ did offer reasons for rejecting this opinion, her failure to acknowledge that not one, but two nonexamining psychologists offered uncontradicted opinions as to social functioning raises a question as to the sufficiency of the ALJ's review of the record and her reasoning.   The ALJ should reconsider and address the medical opinions of Drs. Covell and Robinson on remand.

2.    Dr. Dees:

The ALJ also erred in addressing the June 2012 opinions of Dr. Dees.  Dr. Dees opined plaintiff appeared able to perform simple and repetitive tasks, but would likely have more

REPORT AND RECOMMENDATION
PAGE - 7

1  difficulty with more complex tasks due to mental health issues; that it was unlikely he would be

2  able to work in a consistent and competitive environment or show up for work on time due to

3  these issues; that depression, anxiety, low self-esteem, pessimism, and low self-worth would

4  likely impair his ability to interact with others and maintain a consistent work schedule; and that

5  he prefers to socially isolate and has difficulty being around others.  (AR 370.)  The ALJ rejected

6  the opinions of Dr. Dees as based largely on plaintiff's self-reported symptoms, which the ALJ

7  did not find entirely credible; the conclusion that plaintiff had incentive to overstate his

8  symptoms and complaints because the evaluation was conducted for the purpose of determining

9  eligibility for state assistance; that the evaluation form was completed by checking boxes and

10 contained few objective findings; and the perception that plaintiff's actual activities had been

11 greater than those reported to Dr. Dees.  (AR 22.)

12      "[I]n the absence of other evidence to undermine the credibility of a medical report, the

13 purpose for which the report was obtained does not provide a legitimate basis for rejecting it."

14 *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *accord Lester*, 81 F.3d 832 (absent

15 "evidence of actual improprieties," examining doctor's findings entitled to no less weight when

16 examination procured by the claimant than when obtained by the Commissioner).  Here, while

17 the ALJ did find plaintiff less than fully credible, she provided only two reasons for that

18 determination, neither of which are reasonably construed as supporting the ALJ's conclusion in

19 relation to Dr. Dees's report.  (AR 20-21 (finding evidence failed to document significant

20 objective findings inconsistent with RFC and showed activities consistent with RFC).)

21      Nor is the form completed by Dr. Dees fairly described as a check-off report lacking any

22 explanation for the conclusions and permissibly rejected on that basis.  *Molina*, 674 F.3d at 1111.

23 The form, in fact, contains only a small number of checked boxes, and otherwise includes written

REPORT AND RECOMMENDATION
PAGE - 8

answers, including Dr. Dees's opinion, in narrative form, as to the effect of plaintiff's symptoms on his ability to work. (AR 368-70.) *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not.").

The ALJ likewise did not reasonably rely on a perceived difference between plaintiff's actual activities and the activities he reported to Dr. Dees. Dr. Dees reflected plaintiff's report that he went to the library, read, was trying to learn the computer, walked around town, goes to Tacoma to see his son every few days, cannot sit idle due to his anxiety, had inconsistent activities of daily living due to depression, last showered a couple of weeks ago, had inconsistent appetite and usually ate only once daily, and rides the bus. (AR 370.) He also reported plaintiff had previously stayed at a shelter, but was at that time staying with a friend. (AR 369-70.) The differences between plaintiff's report to Dr. Dees and his activities as described by the ALJ are minimal, and explained in large part by the fact that, at the time of the hearing, plaintiff was living in a shelter where he was required to do chores, including working security once a week, helping with cleaning, and attending meetings. (*See* AR 18, 21, 57-59.)

The ALJ's remaining reason for rejecting the opinions of Dr. Dees consisted of her perception that it was based largely on plaintiff's discredited self-reported symptoms. "An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). In this case, Dr. Dees conducted a mental status examination in which plaintiff was observed to be significantly depressed with congruent affect, but also alert, friendly, and cooperative, socially appropriate and fully engaged, and with normal speech and logical, linear, and goal oriented

REPORT AND RECOMMENDATION
PAGE - 9

thought processes.  (AR 371.)  Plaintiff was fully oriented, had only mildly impaired memory and good fund of knowledge, completed both simple and complex instructions, and had abstract thinking within normal limits.  (*Id*.)  The only other testing performed by Dr. Dees consisted of plaintiff's reporting of his symptoms.  (*See* AR 373.)  The ALJ, as such, can be said to have reasonably concluded that Dr. Dees relied in significant part on plaintiff's discredited subjective reports.  However, because the ALJ erred in each of the three other reasons provided in relation to Dr. Dees, further consideration of this evidence is warranted on remand.

       3.    <u>Therapist Hains</u>:

The ALJ did not err in considering the opinions of Hains.  The ALJ noted that Hains did not opine as to work-related activities because he had not observed plaintiff in the workplace and felt he could not assess the impact of illness on work performance.  (AR 22.)  She also took note of Hains's observation that, even when plaintiff's functional abilities were diminished during regular and significant bouts of depression, he was able to tend to his activities of daily living to a diminished degree.  (*Id*.)  The ALJ, as such, properly provided germane reasons for assigning little weight to the opinions of Hains.

       4.    <u>GAF scores</u>:

The ALJ pointed to GAF scores from Dr. Dees and Hains.  She described the scores as quite low, but also inconsistent with plaintiff's self-reported activities, including participating in required chores at the shelter where he stays, using public transportation, going to parks and the library, and doing his laundry and showering at an urban rest stop.  (AR 22.)  The ALJ noted that, as reflected in plaintiff's testimony, he responds appropriately to situations that make him angry by walking away.  (*Id*.)  The ALJ declined to place a high degree of reliance and gave little weight to the GAF scores given that they are highly subjective, intertwine psychological

1   symptoms, physical impairments, and socioeconomic factors, and relied on plaintiffs' discredited

2   subjective complaints.  (*See* AR 22-23.)

3          A GAF score cannot alone be used to "raise" or "lower" someone's level of function,

4   and, unless the reasons behind the rating and applicable time period are clearly explained, it does

5   not provide a reliable longitudinal picture of a claimant's mental functioning for a disability

6   analysis.   Administrative Message 13066 ("AM-13066").   The most recent version of the

7   Diagnostic and Statistical Manual of Mental Disorders (DSM-V) does not include a GAF rating

8   for assessment of mental disorders.   DSM-V at 16-17 (5th ed. 2013).   The Social Security

9   Administration continues to receive and consider a GAF score as opinion evidence "when it

10  comes from an acceptable medical source[.]"   AM-13066.

11         Because Hains is not an acceptable medical source, the ALJ was not required to consider

12  the GAF score he assessed as opinion evidence.   The ALJ, in any event, adequately addressed

13  the GAF scores in the record by providing several reasons for according them little weight.

14  C.   Development of the Record

15         Plaintiff avers error in the ALJ's failure to secure missing records.   At hearing, the ALJ

16  and counsel for plaintiff discussed records missing from Drs. Tsai and Scott, and the ALJ

17  indicated she would request updated records from those providers.   (*See* AR 34-35, 89.)   Because

18  the ALJ secured only updated records from Dr. Tsai (*see* AR 591-612), plaintiff avers she failed

19  in her "independent duty to fully and fairly develop the record and to assure that the claimant's

20  interests are considered."   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal

21  quotation marks and quoted sources omitted).   As plaintiff observes, this duty extends to both

22  represented and unrepresented claimants.   *Id.*

23         The Commissioner maintains the ALJ had no duty to develop the record further given

REPORT AND RECOMMENDATION
PAGE - 11

1  that the existing evidence from Drs. Tsai and Scott was not ambiguous and was sufficient to

2  allow for proper evaluation of plaintiff's claim.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60

3  (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is

4  ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

5  evidence.")  The Commissioner further maintains that plaintiff fails to meet his burden of

6  showing "a substantial likelihood of prejudice" arising from the failure to obtain the additional

7  records.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

8         Plaintiff, in response, states he could not afford to obtain the updated records due to his

9  indigent status, maintains the Commissioner inappropriately offers post hoc rationalizations as to

10 why the records were not obtained, and argues the suggestion he show prejudice would require

11 he intuit the content of the missing records.  Plaintiff states that the records pertain to his

12 physical problems and the work-up prior to his neck surgery, and maintains their relevance given

13 the existing evidence, including the records never addressed by the ALJ.

14        In *McLeod*, the Ninth Circuit determined that, while the party claiming error bears the

15 burden of showing prejudice, a reviewing court "can determine from the 'circumstances of the

16 case' that further administrative review is needed to determine whether there was prejudice from

17 the error." 640 F.3d at 888 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 129 S.Ct. 1696, 1706

18 (2009)).  "Mere probability is not enough. But where the circumstances of the case show a

19 substantial likelihood of prejudice, remand is appropriate so that the agency 'can decide whether

20 re-consideration is necessary.' By contrast, where harmlessness is clear and not a 'borderline

21 question,' remand for reconsideration is not appropriate."  *Id*. (finding failure to develop the

22 record to secure claimant's VA determination was reasonably likely to have been prejudicial and

23 necessitated remand) (quoting *Shinseki*, 129 S.Ct. at 1708).  *See also Garcia v. Comm'r of Soc.*

REPORT AND RECOMMENDATION
PAGE - 12

1    *Sec.*, 768 F.3d 925, 932 n.10 (9th Cir.  2014) ("*McLeod* is limited to situations where the record

2    is insufficient for the court to make its own prejudice determination, and remand is required for

3    the ALJ to determine the harmfulness of the omission in the first instance. It makes good sense

4    that, in such a situation, 'mere probability' that hypothetical new evidence—like the potential

5    disability certificate—may be influential is insufficient to support a remand."; finding no reason

6    to depart from harmlessness standard where court knew precisely the evidence that had been

7    omitted and had "no doubts about its significance").

8            In this case, while there appears to be no dispute that some records from Dr. Scott are

9    missing from the record, it remains entirely unclear whether such records would support

10   plaintiff's allegations or provide further support for the ALJ's conclusions.  Nor does the Court

11   find the existing evidence from Dr. Scott and other evidence of record either ambiguous or

12   inadequate to allow for a determination in relation to plaintiff's physical impairments.  However,

13   because plaintiff demonstrates the need for further consideration of his claim, the ALJ should

14   take the opportunity to secure any missing records from plaintiff's providers, and, if necessary,

15   explain why such records have not been obtained.

16                                          Credibility

17           Absent evidence of malingering, an ALJ must provide specific, clear, and convincing

18   reasons to reject a claimant's testimony.  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir.

19   2014) (citing *Molina*, 674 F.3d at 1112).  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036

20   (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony

21   is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at

22   834.  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

23   inconsistencies either in his testimony or between his testimony and his conduct, his daily

REPORT AND RECOMMENDATION
PAGE - 13

activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ in this case found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but did not find all of his symptom allegations to be credible. She provided two reasons in support, finding the record failed to document significant objective findings inconsistent with the assessed RFC, and that plaintiff had engaged in activities consistent with the RFC. (AR 20-21.)

An ALJ may properly rely on inconsistency between a plaintiff's allegations and both objective findings and activities as reasons for finding a plaintiff not fully credible. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); and *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they contradict the claimant's testimony); *Molina*, 674 F.3d at 1113 (ALJ reasonably concluded evidence of activities undermined claims as to allegedly disabling limitations). However, because the ALJ's errors in considering the medical evidence of record may have implicated her credibility assessment, and in light of the very minimal discussion of the medical evidence in this case, the ALJ should reconsider plaintiff's credibility on remand.

<u>Step Five</u>

Plaintiff avers error in the ALJ's step five determination. He states that the limitation to

REPORT AND RECOMMENDATION
PAGE - 14

unskilled, routine, and repetitive tasks limits him to jobs with reasoning levels of less than three and excludes the job of storage facility clerk.  *See Zavalin v. Colvin*, 778 F.3d 842, 846-48 (9th Cir. 2015) (holding "reasoning level 3" work is in inherent conflict with an RFC restriction to simple, repetitive tasks, and the ALJ was required to ask the VE to explain the conflict).  Plaintiff also states that the VE erred in identifying the number of photo copy machine operator jobs (*see* AR 24, 80-81 (identifying 25,958 nationally and 415 jobs in Washington State)), and points to a contrary VE opinion he provided to the ALJ after the hearing as supporting the existence of only 519 and 7 of such jobs at the national and state levels respectively.  (*See* AR 209 and Dkt. 15 at 15.)  Plaintiff reiterates an objection he made at hearing as to the reliability of the job information provided by the VE, adding that the ALJ failed to reference and apparently ignored the post-hearing brief he submitted.

The Commissioner rejects the general challenge to the reliability of the VE's testimony, noting long-standing precedent holding that a "VE's recognized expertise provides the necessary foundation for his or her testimony."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  The Commissioner does not, however, dispute either of the two specific assignments of error raised by plaintiff.  She, instead, maintains the remaining job identified – advertisement material distributor – suffices to support the ALJ's step five finding.  That is, even as described in the VE brief proffered by plaintiff, there are 43,943 of these jobs nationally and 504 in Washington State.  (*See* AR 209; *see also* AR 24, 81 (the VE at hearing identified 57,271 of these jobs nationally and 699 in Washington State).)  (*See also* Dkt. 15 at 15-16 (plaintiff states that, other than some differences in the job numbers as testified to by the VE at hearing, this job "appears to meet the requirements of the law."))

Plaintiff does not demonstrate error in the ALJ's reliance, as a general matter, on the

REPORT AND RECOMMENDATION
PAGE - 15

VE's testimony at hearing.  "An ALJ may take administrative notice of any reliable job information, including information provided by a VE."  *Bayliss*, 427 F.3d at 1218.  As the Commissioner observes, a "VE's recognized expertise provides the necessary foundation for his or her testimony."  *Id*.

It could also arguably be said that, even assuming the alleged errors in relation to two of the three jobs identified at step five, the ALJ's conclusion would retain the support of substantial evidence with consideration of the advertisement material distributor jobs, together with the modified number of copy machine operator jobs identified by plaintiff.  *See*, *e.g.*, *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding 2,500 jobs in California and 25,000 jobs in several regions of the country constituted significant numbers of jobs to support step five finding); *Yelovich v. Colvin*, No. 11-36071, 2013 U.S. App. LEXIS 13248 at *4 (9th Cir. Jun. 27, 2013) (finding error in relation to two jobs harmless where there were a significant number of jobs in a third occupation, including 900 jobs regionally and 42,000 jobs nationally; noting that the Ninth Circuit has found 135 regional and 1,680 national jobs not a significant number, while finding as few as 1,266 regional jobs significant, and referencing cases finding as few as 500 jobs significant); *Meanel v. Apfel*, 172 F.3d 1111, 1114-15 (9th Cir. 1999) (declining to address arguments regarding one of two jobs identified by the ALJ given that the number of positions for one of those jobs, between 1,000 and 1,500 in the local area, constituted a significant number).  The Court, however, need not reach a conclusion on this issue.

Because the ALJ's reconsideration of the medical evidence and plaintiff's credibility may implicate the step five conclusion, the ALJ should also reconsider plaintiff's claim at step five. In so doing, the ALJ should correct any step five errors raised by plaintiff and not disputed by the Commissioner herein.

REPORT AND RECOMMENDATION
PAGE - 16

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 22, 2016**.

DATED this 1st day of April, 2016.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 17